**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MICHELLE MAGNANI,<br><br>          Plaintiff,<br><br>     v.<br><br>KIM METZ, et al.,<br><br>          Defendants. | Civil Action No. 18-12930 (ZNQ)<br><br>**MEMORANDUM OPINION** |

**QURAISHI, Magistrate Judge**

      This matter comes before the Court upon Defendants Kim Metz, Hunterdon County Board of Vocational Education (the "Board"), Kevin Gillman, Ridgeley Hutchinson, John Philips, Juan Torres, and Elizabeth Martin's (collectively "Defendants") Motion for Summary Judgment (the "Motion") on Plaintiff's Complaint, including her claims of breach of contract and age discrimination. (ECF No. 29.) The undersigned is authorized to hear this matter pursuant to 28 U.S.C. § 636(c)(1). (*See* Notice of Consent, ECF No. 28.) Plaintiff Michelle Magnani ("Plaintiff") opposed Defendants' Motion, (ECF No. 35), to which Defendants replied, (ECF No. 37). The Court has carefully considered the parties' arguments and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Defendants' Motion for Summary Judgment is granted.

I.      **BACKGROUND**

A.      **Undisputed Facts**

Plaintiff is a former employee of the Hunterdon County Vocational School District (the "District"). (Defs.' Statement of Material Facts ("DMF") ¶ 1, ECF No. 29-6; Plaintiff's Counterstatement of Material Facts ("PMF") ¶¶ 1, 3, ECF No. 35-11.)[1] In 2014, Plaintiff was interviewed for a teaching position by then-Principal Daniel Kerr ("Principal Kerr") and Director of Curriculum Jessica Cangelosi ("Director Cangelosi"). (DMF ¶ 5; PMF ¶ 3.) The Board then approved her for hire. (DMF ¶ 6; PMF ¶ 3.) Plaintiff was offered a ten-month employment contract for a three-fifths position without benefits. (DMF ¶¶ 6–7; PMF ¶ 3.) She began working as a cosmetology teacher at the Polytech Vocational High School ("Polytech") at the beginning of the 2014-15 school year. (DMF ¶ 4; PMF ¶¶ 3–4.) Plaintiff taught approximately sixteen students, four of whom she believed had an Individualized Education Plan ("IEP") or a Section 504 Plan ("504 Plan").[2] (DMF ¶¶ 8, 14; PMF ¶¶ 3, 7–8.)

---

[1] The Court notes that, in response to Defendants' Statement of Material Facts, Plaintiff only filed a Counterstatement of Material Facts. Plaintiff's Counterstatement contains a paragraph, identifying which enumerated facts in Defendants' Statement of Material Facts are in dispute, and which are undisputed. (*See* PMF ¶ 3.) Defendants did not respond to Plaintiff's Counterstatement. Any additional facts Plaintiff asserted in her Counterstatement the Court deems admitted for the purposes of deciding this Motion. Fed. R. Civ. P. 56(e)(2).

[2] The Individuals with Disabilities Education Act ("IDEA") requires school districts to "identify and evaluate all children who they have reason to believe are disabled under the statute," and "offer an IEP that is 'reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential.'" *Munir v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013) (quoting *P.P. ex rel. Michael P. v. W. Chester Area Sch. Dist.*, 585 F.3d 727, 729–30 (3d Cir. 2009)). Similarly, under the Rehabilitation Act "a school district must reasonably accommodate the needs of the handicapped child so as to ensure meaningful participation in educational activities and meaningful access to educational benefits." *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 280 (3d Cir. 2012).

Plaintiff considered Principal Kerr and Director Cangelosi her supervisors, and both evaluated her. (DMF ¶ 10; PMF ¶¶ 3, 9.) At the end of the school year, Plaintiff alleges Principal Kerr and Director Cangelosi told her they liked how she dealt with her class and that they would like to have her on next year. (DMF ¶ 12; PMF ¶ 3.) Plaintiff concedes Director Cangelosi advised her to put more information in her lesson plans for IEP and 504 Plan students under the Accommodations/Modifications and Differentiation sections. (DMF ¶ 13; PMF ¶¶ 3, 10.)

The Board renewed Plaintiff's appointment for the 2015-16 school year, and granted her a fulltime teaching position. (DMF ¶ 15; PMF ¶¶ 3, 5.) As a fulltime teacher, Plaintiff taught two classes, with a total of about fifty-two students, including fourteen or fifteen with IEPs or 504 Plans. (DMF ¶¶ 16–18; PMF ¶¶ 3, 17.) Plaintiff claims Principal Kerr told her she was doing a good job at the beginning of the year, and Director Cangelosi told her she was doing well during a midyear review. (DMF ¶ 19; PMF ¶¶ 3, 19.) Plaintiff also claims that in late 2015, the Superintendent, Kim Metz ("Superintendent Metz"), told her she was doing well. (DMF ¶ 30; PMF ¶¶ 3, 23.) On April 15, 2016, Plaintiff received a *Rice* notice,[3] advising her that the Board would be conducting their annual personnel review and would address employment renewals. (DMF ¶ 31; PMF ¶ 3.) Plaintiff's union representative informed her that she could discuss her employment status in public before the Board. (DMF ¶ 32; PMF ¶ 3.) At the next Board meeting, on April 18, 2016, Plaintiff, her union representative, and several parents and students spoke on her behalf. (DMF ¶ 33; PMF ¶ 3.) On April 26, 2016, Plaintiff was notified that her teaching contract would not be renewed. (DMF ¶ 34; PMF ¶ 3.) Plaintiff again spoke to the Board on May 16, 2016. (DMF

---

[3] Public employees are "entitled to reasonable notice of the intention of the board [of education] to consider personnel matters related to them." *Rice v. Union Cty. Reg'l High Sch. Bd. of Ed.*, 382 A.2d 386, 390 (N.J. App. Div. 1977).

¶ 35; PMF ¶ 3.) The Board's members included Defendants Kevin Gillman, Ridgeley Hutchinson, John Philips, Juan Torres, and Elizabeth Martin. (DMF ¶ 35; PMF ¶ 3.)

Regarding personnel decisions, Superintendent Metz makes recommendations to the Board, and the Board makes the ultimate decision. (DMF ¶ 46; PMF ¶ 3.) The Board generally followed Superintendent Metz's recommendations. (DMF ¶ 48; PMF ¶ 3.) She considered multiple factors in making her recommendations, including observations reports and performance. (DMF ¶¶ 49–50; PMF ¶ 3.) Believing Plaintiff was "not a good fit," Superintendent Metz recommended Plaintiff's contract not be renewed, and the Board followed that recommendation. (DMF ¶¶ 54–55; PMF ¶ 3.)

Plaintiff was either fifty-four or fifty-five when her contract was not renewed. (DMF ¶ 37; PMF ¶ 3.) Plaintiff's eventual replacement was younger than her. (DMF ¶ 38; PMF ¶ 3.) Plaintiff claims Principal Kerr once told her "you're never too old to learn," but conceded at her deposition that she had no evidence any member of the Board held age-based animus. (DMF ¶¶ 39–40; PMF ¶ 3.)

### B.   Disputed Facts

Defendants claim that, in November 2015, Principal Kerr gave Plaintiff a formal letter of reprimand for failing to follow the 504 Plans and IEPs of four students. (DMF ¶¶ 20–21; *see also* Mem. of Reprimand, Ex. A to Kerr Aff., ECF No. 29-4.) Specifically, Defendants allege Plaintiff failed to provide oral or small-group testing accommodations for several students. (DMF ¶¶ 22–23; *see also* Mem. of Reprimand.) Plaintiff lists this item as disputed, (PMF ¶ 3), yet does not dispute that she received the letter, (*see id.* ¶ 18). Plaintiff claims, instead, that some of her students were "very abusive" towards her. (*Id.* ¶ 15.) In particular, Plaintiff explains that she "had a problem with one of [her] student[s] J.B.," and that incident resulted in the letter of reprimand. (*Id.* ¶¶ 17–18.) Plaintiff asserts J.B.'s certification now debunks the letter of reprimand. (*Id.* ¶ 18.) In her

certification J.B. states the administration violated her IEP by failing to inform Plaintiff her first exam was to be given orally. (J.B. Certif. ¶ 6, Ex. C to Pl.'s Opp'n, ECF No. 35-15.)

Further, Defendants claim that over the course of the 2015-16 school year, numerous parents complained about Plaintiff to Principal Kerr. (DMF ¶ 25.) Defendants charge Principal Kerr received reports that Plaintiff shared details of her personal life with her class, failed to provide adequate instruction, and singled out a student and treated that student unfairly. (DMF ¶¶ 25–27, 29; *see also* Principal Kerr's Notes, Ex. B to Kerr Aff., ECF No. 29-4.) Plaintiff claims she had no knowledge of Principal Kerr's one-sided notes, always treated her students equally, and that she simply answered students' life questions when asked. (Magnani Certif. in Resp. to Affs. of Metz, Kerr, and Cangelosi ¶¶ 25, 49, 75–77, ECF No. 35-6.)

Plaintiff asserts that, during his deposition, Principal Kerr admitted Plaintiff was rated proficient in her end-of-year assessment and confirmed she always maintained a professional demeanor. (PMF ¶¶ 39–40.) Plaintiff further contends Principal Kerr expressed a desire for her to be rehired, (Magnani Certif. in Resp. to Affs. of Metz, Kerr, and Cangelosi ¶ 40), and the parties agree Principal Kerr offered to provide Plaintiff with a letter of recommendation, (DMF ¶ 41; PMF ¶ 3).

## II.   PLAINTIFF'S CLAIMS

In her nine-count Complaint, Plaintiff seeks damages for her alleged unlawful termination. (*See* Compl. ¶¶ 46, 55, 63.) Plaintiff alleges:

1.   She was told she was doing well and reasonably relied on the promise of job security. (Compl. ¶ 42.) Defendants breached Plaintiff's employment agreement by wrongfully terminating her. (*Id.* ¶ 45.)

2.   Defendants breached the duty of good faith and fair dealing implied in Plaintiff's employment contract by wrongfully terminating her. (*Id.* ¶¶ 48–50.)

3.   Defendants engaged in deceit and fraud in their dealings with Plaintiff.  (*Id.* ¶ 57.)

4.    Defendants intentionally and with malice wrongfully interfered with Plaintiff's contractual rights under her employment agreement. (*Id.* ¶¶ 65, 67.)

5.    Defendants willfully, intentionally, and with malice inflicted malicious harm on Plaintiff by breaching her employment agreement. (*Id.* ¶¶ 72, 75.)

6.    Defendants made a clear and definite promise in her employment agreement, upon which Plaintiff reasonably and justifiably relied, and Defendants deprived Plaintiff of the benefits of her employment agreement. (*Id.* ¶¶ 78–82.)

7.    Defendants conspired and acted in concert to commit an unlawful act, or a lawful act by unlawful means, against Plaintiff. (*Id.* ¶¶ 85–86.)

8.    Age discrimination in employment in violation of New Jersey's Law Against Discrimination ("LAD"), N.J. Stat. Ann. 10.5-1, *et seq.* (*Id.* ¶¶ 90–91.)

9.    Age discrimination in employment in violation of the Age Discrimination in Employment Act ("ADEA"), 28 U.S.C. section 621, *et seq.* (*Id.* ¶ 95.)

In their Motion, asserting discovery has failed to yield evidence to support Plaintiffs claims, Defendants seek summary judgment in their favor. (Moving Br. 1–2, ECF No. 29-7.)

## III.    **LEGAL STANDARD**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of

material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250). "Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

## IV.     DISCUSSION

### A.     Count 1: Breach of Contract

Defendants assert Plaintiff's claim for breach of contract is predicated on nothing more than her belief that her contract would be renewed because she was told she was doing a good job. (Moving Br. 5.) Defendants submit Plaintiff's one-year employment contract contained no assurance of renewal, that Plaintiff has not identified a provision of her contract that was breached, and that Plaintiff failed to identify any conduct by the District as a breach. (*Id.*)

Plaintiff concedes her one-year employment contract contains no guarantee of renewal, but argues Defendants' employees indicated she would be renewed. (Pl.'s Opp'n 9, ECF No. 35.) She contends there were at least three instances of statements by Principal Kerr and Superintendent Metz that would lead a reasonably prudent person, like Plaintiff, to conclude her contract would be renewed. (*Id.*) Plaintiff also highlights that another cosmetology teacher, Elaine DiBenedetto, told Principal Kerr to tell Plaintiff whether he would not renew her contract because she was planning on downsizing her salon. (*Id.*)

In reply, Defendants emphasize that Plaintiff relies on positive comments about her performance, and stress that Plaintiff has failed to point to any promise that her contract would be renewed. (Defs.' Reply 2, ECF No. 37.) Defendants argue Plaintiff's subjective assumptions cannot bind the District. (*Id.*)

"To state a claim for breach of contract, [a plaintiff] must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). N.J. Stat. Ann. section 18A:27-1 provides "[n]o teaching staff member shall be appointed, except by a recorded roll call majority vote of the full membership of the board of education appointing him." Nontenured teachers may receive one-year contracts renewable upon "the recommendation of the chief school administrator and by a recorded roll call majority vote of the full membership of the board." *Millar v. Pitman Bd. of Educ.*, No. 10-4104, 2011 U.S. Dist. LEXIS 63962, at *11 (D.N.J. June 13, 2011) (quoting N.J. Stat. Ann. § 18A:27-4.1). Boards of education have no obligation to renew the one-year employment contracts of nontenured teachers. *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1109 (N.J. 2009).

The Court finds Plaintiff cannot establish a claim for breach of contract. Plaintiff has failed to identify a promise of renewal by Defendants or Principal Kerr. Instead, Plaintiff points to positive feedback and, at most, precatory statements. (*See, e.g.*, Second Magnani Certif. in Resp. to Affs. of Metz, Kerr, and Cangelosi ¶¶ 18–21, 40–41, 45, 65, ECF No. 35-7.) Plaintiff's strongest evidence of a promise is an alleged conversation occurring around Christmas—four months before her nonrenewal—where Superintendent Metz told Plaintiff there was no reason why she should not be renewed as a fulltime cosmetology teacher. (*Id.* ¶ 21.) Far from a promise of renewal, Superintendent Metz's phrasing seems to implicitly acknowledge the ultimate discretion was with

the Board. Similarly, Plaintiff alleges Principal Kerr "expressed [a] desire for [her] to be rehired for the upcoming school year." (*Id.* ¶ 40.) Those statements are insufficient to establish a promise of renewal.

Moreover, as this Court noted above, "New Jersey law prohibits the Board from offering Plaintiff any guarantee of continued employment beyond her initial one-year contract." *Millar*, 2011 U.S. Dist. LEXIS 63962, at *12. Thus, even if Principal Kerr's or Superintendent Metz's comments were taken as assurances that Plaintiff's contract would be renewed, their statements could not bind the Board. *Id.* at *16. "In light of the Board's clear statutory right to decline to renew her contract, [P]laintiff's breach of contract claim must fail because that claim is based on the Board's non-renewal decision." *Leang*, 969 A.2d at 1109.

## B.      Count 2: Breach of the Implied Duty of Good Faith and Fair Dealing

Defendants argue Plaintiff has failed to allege, and discovery has failed to yield, anything suggesting Plaintiff did not receive the benefit of her contract with the District. (Moving Br. 7.) Nonrenewal, they submit, does not establish a breach of good faith or fair dealing. (*Id.*)

Plaintiff directs the Court to its arguments as to Count One. (Pl.'s Opp'n 10.) Plaintiff adds that Principal Kerr surreptitiously gathered false and misleading information from students who did not like Plaintiff. (*Id.* at 10–11.) Plaintiff contends these notes were an attempt to thwart her renewal, "thus preventing her from getting one of the benefits of the bargain originally intended as part of the one-year contract (i.e. renewal)." (*Id.* at 11.)

In every contract, there is the implied covenant of good faith and fair dealing. *Palisades Props., Inc. v. Brunetti*, 207 A.2d 522, 531 (N.J. 1965). The New Jersey Supreme Court has explained that, pursuant to the implied covenant, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* The Court has further held "a party exercising its right to use discretion . . . under a contract

breaches the duty of good faith and fair dealing if that party exercises its discretionary authority arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits under the contract." *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1130 (N.J. 2001).

At base, Plaintiff's claim must fail because she has not demonstrated she had a contractual right to renewal. As explained above, Plaintiff has not alleged she was promised that her contract would be renewed, much less that she was entitled to it under her one-year employment contract. The implied covenant of good faith and fair dealing is thus a poor fit under the circumstances. Even assuming *arguendo* Principal Kerr conspired to deprive her of the renewed contract, there is no breach of the implied covenant because Plaintiff was never entitled to renewal. *See Millar*, 2011 U.S. Dist. LEXIS 63962, at *12.

### C.    Count 3: Fraud

Defendants argue Plaintiff has failed to allege facts or present any evidence demonstrating fraud. (Moving Br. 9.) First, they note that Plaintiff's contract was not terminated, but was simply not renewed. (*Id.*) Second, Defendants contend Superintendent Metz's comments about Plaintiff's performance cannot be shown to be fraud because they were made months before Superintendent Metz recommended Plaintiff's contract not be renewed, and Plaintiff has not demonstrated or alleged Superintendent Metz knew her statements were false. (*Id.* at 9–10.)

Plaintiff responds that Superintendent Metz's and Principal Kerr's comments related to Plaintiff's performance, and Principal Kerr's "non-action towards the Plaintiff in not letting her know that her contract was not going to be renewed after a conversation with [Elaine] DiBenedetto," satisfies the common law elements of fraud. (Pl.'s Opp'n 12.) Plaintiff alleges both Superintendent Metz and Principal Kerr made material misrepresentations and that they knew those misrepresentations were false. (*Id.*)

In reply, Defendants assert Plaintiff has failed to produce evidence of fraud because neither Superintendent Metz or Principal Kerr told Plaintiff her contract would be renewed. (Defs.' Reply 4.) Defendants submit the Board complied with the statutory framework for a nonrenewal and this claim must be dismissed. (*Id.*)

"[T]o avoid summary judgment, [Plaintiff] must present evidence by which a jury could find fraud by clear and convincing evidence." *Diaz v. Johnson Matthey, Inc.*, 869 F. Supp. 1155, 1164 (D.N.J. 1994). To prove a claim for common law fraud, a Plaintiff must demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Allstate New Jersey Ins. Co. v. Lajara*, 117 A.3d 1221, 1231 (N.J. 2015) (quoting *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005)); *see also Intile Realty Co., Inc. v. Raho*, 614 A.2d 167, 186 (N.J. Super. Ct. 1992) (listing three elements that are substantively the same). "Common law fraud requires a showing of actual reliance, but not objectively reasonable reliance, since the perpetrator of a fraud may not urge that the victim should have been 'more circumspect or astute.'" *Union Ink Co. v. AT&T Corp.*, 801 A.2d 361, 379–80 (N.J. App. Div. 2002) (quoting *Jewish Ctr. of Sussex County v. Whale*, 86 N.J. 619, 626 n.1 (1981)).

The Court finds summary judgment appropriate on Plaintiff's fraud claim. Plaintiff's Complaint alleges Superintendent Metz and a defendant who was voluntarily dismissed conspired to wrongfully terminate her contract. (Compl. ¶¶ 57–60.) There is no dispute that Plaintiff's contract was not terminated, rather the Board decided not to renew it. (DMF ¶ 34; PMF ¶ 3.)

Turning to the elements of fraud, Plaintiff's entire claim is based on her assertion that Superintendent Metz and Principal Kerr materially misrepresented their opinion of her

performance, and that she relied on those representations to her detriment. Those allegations fail to establish a prima facie case of fraud. First, Plaintiff has put forward little evidence that Superintendent Metz's statements, and no evidence that Principal Kerr's statements, were misrepresentations at the time they were made. As discussed above, Plaintiff alleges Superintendent Metz told her in December there was no reason why she would not be renewed as a fulltime cosmetology teacher. (Second Magnani Certif. in Resp. to Affs. of Metz, Kerr, and Cangelosi ¶ 21.) Superintendent Metz's statement came before students purportedly complained about Plaintiff's inappropriate classroom comments, (*see* Principal Kerr's Notes 1–2), and such an indefinite statement supposedly made to boost employee morale cannot satisfy the first element, *see Suarez v. E. Int'l Coll.*, 50 A.3d 75, 86 (N.J. App. Div. 2012) (noting expressions of opinion usually cannot form the basis for a fraud claim). Similarly, Principal Kerr's expressed "desire" for Plaintiff's contract to be renewed cannot qualify as a material misrepresentation. (*See Suarez*, 50 A.3d at 86.) Second, even if Superintendent Metz's statement was a misrepresentation, Plaintiff has not brought forward any evidence that she intended Plaintiff to rely on it. Plaintiff's evidence of the falsity of that statement is Superintendent Metz's testimony that she told teachers they were doing a good job around Christmas regardless of their actual performance to make them feel good. (Second Magnani Certif. in Resp. to Affs. of Metz, Kerr, and Cangelosi ¶¶ 18–21.) Plaintiff does not even put forward a theory about why Defendants or Principal Kerr would mislead her about her performance, especially if they would later use her performance to justify not renewing her contract. Third, where the statutory framework clearly vests renewal in the discretion of the Board, no reasonable factfinder could conclude that Plaintiff relied on positive performance reviews and Superintendent Metz's opinion in expecting that her contract would be renewed.

### D.     Count 4: Interference with Economic Advantage

Plaintiff concedes she cannot establish a prima facie claim for tortious interference with an economic advantage. (Pl.'s Opp'n 13.) Accordingly, the Court finds summary judgment appropriate on Count Four.

### E.     Count 5: Malicious Harm

Next Defendants argue that there is no tort for "malicious harm" and, even if there is, Plaintiff's claim is barred because she failed to file a notice of tort claim. (Moving Br. 19.) Addressing the substance of Plaintiff's claim, Defendants contend her claim must fail because it stems from her breach of contract claim and because she has failed to discover evidence of malice. (*Id.*)

Plaintiff does not dispute that her "cause of action for malicious harm is embedded within [her] breach of contract claim." (Pl.'s Opp'n 13.) Plaintiff relies on her arguments regarding Principal Kerr and Superintendent Metz's statements related to Plaintiff's performance. (*See id.* at 14.)

"The prima facie tort is designed to redress unjustified intentional, willful or malicious harms where no adequate common law or statutory remedy exists." *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 485 (D.N.J. 1997), *aff'd*, 156 F.3d 1225 (3d Cir. 1998) (quotation omitted). "In *Richard A. Pulaski Construction Co. v. Air Frame Hangars*, 950 A.2d 868 (N.J. 2008), the New Jersey Supreme Court assumed, without deciding, that this amorphous tort may be available, but that it is strictly a 'gap-filler.'" *Gibbs v. Massey*, No. 07-3604, 2009 WL 838138, at *9 (D.N.J. Mar. 26, 2009). The Court stated "the availability of the prima facie tort doctrine is limited exclusively to those instances of intentional and culpable conduct unjustified under the circumstances that, as a threshold matter, do not fall within a traditional tort cause of action." *Richard A. Pulaski Const.*, 950 A.2d 868, 870 (N.J. 2008).

As previously stated, Plaintiff has failed to produce any evidence of intentional, malicious, or willful harm, or even proffer an explanation as to why Superintendent Metz or Principal Kerr would lie to her about her performance. Absent evidence that Superintendent Metz or Principal Kerr intended to harm Plaintiff in making positive statements about her performance, summary judgment is appropriate on her malicious harm claim. *See Silvestre*, 973 F. Supp. at 485.

### F.      Count 6: Promissory Estoppel

Defendants argue Plaintiff cannot set out a prima facie case for promissory estoppel because the District honored the terms of her employment contract and she was never promised renewal. (Moving Br. 21.) Defendants assert the statements of Principal Kerr and Superintendent Metz do not constitute a promise of future employment, and Plaintiff's promissory estoppel claim thus fails as a matter of law. (*Id.*) Additionally, Defendants claim Plaintiff failed to show detrimental reliance because she has proffered no evidence that she actually reduced her clientele as a hair stylist in reliance on the alleged promise. (*Id.*)

Plaintiff relies on her previous arguments regarding Principal Kerr's and Superintendent Metz's statements. (Pl.'s Opp'n 15.) Plaintiff further reiterates that Principal Kerr's statements would indicate to a reasonable person that their contract would be renewed, and his failure to tell Plaintiff her contract would not be renewed casts doubt on the reason for nonrenewal. (*Id.*)

To maintain a claim for promissory estoppel at this stage, Plaintiff must show a genuine dispute of material fact that (1) "there was a clear and definite promise," (2) "made with the expectation that the promisee [would] rely on it"; (3) that the promisee reasonably relied on the promise; and (4) detrimental reliance. *Peck v. Imedia, Inc.*, 679 A.2d 745, 752 (N.J. App. Div. 1996) (quotation omitted).

As discussed above, Plaintiff has failed to identify a clear and definite promise that her contract would be renewed. Even if her supervisor's favorable statements of her performance

months before the Board considered renewing Plaintiff's contract are construed as assurances that Plaintiff's contract would be renewed, the ultimate discretion rested with the Board. (*See* DMF ¶ 19; PMF ¶¶ 3, 19; DMF ¶ 30; PMF ¶¶ 3, 23; *Leang*, 969 A.2d at 1109.) Reliance on such indefinite statements, or on positive comments about her performance, would thus be unreasonable. Summary judgment is appropriate on Count Six because Plaintiff has failed to advance evidence to permit a reasonable factfinder to make a determination in her favor at trial that these statements were clear or definite promises, or that she reasonably relied upon them.

### G.    Count 7: Civil Conspiracy

Plaintiff concedes she cannot establish a prima facie claim of civil conspiracy. (Pl.'s Opp'n 16.) Summary judgment is appropriate on Count Seven.

### H.    Count 8: Age Discrimination Prohibited by LAD

Defendants claim Plaintiff failed to assert a prima facie case of age discrimination because discovery did not yield evidence to support Plaintiff's claim that she was replaced by a younger, less-experienced teacher. (Moving Br. 27.) Defendants explain that, while Plaintiff testified she was fifty-four or fifty-five when her contract was not renewed, she could not recall if her initial replacement was younger, and while her eventual replacement was younger, Plaintiff has not proffered any evidence that her eventual replacement was less experienced or less competent. (*Id.*) Citing Director Cangelosi's testimony, Defendants highlight that she recommended, and the Board approved, a teacher close to Plaintiff's age, but that candidate ultimately declined the offer. (*Id.* (citing Cangelosi Aff. ¶¶ 12–13, ECF No. 29-5).) Assuming *arguendo* Plaintiff has established a prima facie case, Defendants argue they have proffered a legitimate non-discriminatory reason for Plaintiff's nonrenewal, her "poor performance and unprofessional conduct." (*Id.* at 28.) Defendants point to Director Cangelosi's testimony that she spoke to Plaintiff during her first year of teaching about Plaintiff arriving late, failing to follow IEPs and 504 Plans, and having

inappropriate conversations with students. (*Id.* (citing Cangelosi Aff. ¶¶ 7–10).) During her second year, Defendants highlight that Principal Kerr gave Plaintiff a formal reprimand for failing to accommodate students, and allege several parents and students complained about conversations Plaintiff had with her students. (*Id.* at 29–30.) It was those issues, Defendants contend, that led Principal Kerr to recommend Plaintiff's contract not be renewed. (*Id.* at 30.) Defendants submit there is no evidence of pretext masking a discriminatory motive. (*Id.* at 32.)

Plaintiff responds simply that she was a proficient teacher. (Pl.'s Opp'n 17.) Plaintiff contends that she was repeatedly told she was doing well and that her one reprimand was made in violation of union rules and in contradiction to the student's certification. (*Id.*) Plaintiff argues she has raised sufficient factual issues to warrant a trial on Defendants' true motives. (*Id.*)

The purpose of LAD is to ban invidious employment discrimination, including discrimination based on age. *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 949 (N.J. 1999); *see also* N.J. Stat. Ann. §§ 10:5-4, -12(a). It is an unlawful employment practice under LAD "to refuse to hire or employ or to bar or to discharge or require to retire" someone based on her age. *Id.* § -12(a).

"In a case alleging age discrimination under the LAD, [a claimant] must show that the prohibited consideration, age, played a role in the decision making process and that it had a determinative influence on the outcome of that process." *Sisler*, 723 A.2d at 953 (quotation and alteration omitted). The claimant may satisfy that burden by advancing direct or circumstantial evidence of discrimination. *Id.* at 954. To qualify as direct evidence, "[t]he evidence produced must, if true, demonstrate not only a hostility toward members of the employee's class, but also a direct causal connection between that hostility and the challenged employment decision."

*Buchholz v. Victor Printing, Inc.*, 877 F. Supp. 2d 180, 185 (D.N.J. 2012) (quoting *Geltzer v. Virtua West Jersey Health Systems*, 804 F.Supp.2d 241, 250 (D.N.J.2011)).

In analyzing claims based on circumstantial evidence, on the other hand, the New Jersey Supreme Court has adopted the tripartite framework outlined by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Wright v. L-3 Commc'ns Corp.*, 227 F. Supp. 2d 293, 297 (D.N.J. 2002). First, the plaintiff must establish a prima facie case by demonstrating by a preponderance of the evidence "(1) [s]he was in a protected group; (2) [s]he was performing [her] job at a level that met [her] employer's legitimate expectations; (3) [s]he nevertheless was fired; and (4) the employer sought someone to perform the same work after [s]he left." *Buchholz*, 877 F. Supp. 2d at 187–88. "[I]n order to satisfy the fourth prong of the *McDonnell Douglas* prima facie case, [a] plaintiff must show that [s]he was replaced by someone sufficiently younger to create an inference of unlawful age discrimination." *Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 625 (D.N.J. 2001); *accord Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 303 (3d Cir. 2004). "[A] [p]laintiff's burden in establishing a prima facie case is not onerous and the prima facie case is generally easily made out." *Swider*, 134 F. Supp. 2d at 621. If the plaintiff is successful, then the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the employment action. *Buchholz*, 877 F. Supp. 2d at 187. Then, if the defendant articulates a legitimate nondiscriminatory reason for its action, the burden shifts back to the plaintiff to show sufficient evidence to support an inference that the defendant did not act for the stated nondiscriminatory reason. *Id.* at 189–90. "An employee successfully meets this burden by 'persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Swider*, 134 F. Supp. 2d at 622 (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

Construing this evidence in the light most favorable to the Plaintiff, the Court finds Plaintiff has fallen short of establishing a prima facie case. Plaintiff has sufficiently demonstrated that she is a member of a protected group under the first prong, as LAD makes it unlawful for an employer to discriminate based on age. *See* N.J. Stat. Ann. § 10:5-12. On the second prong, Plaintiff has advanced a genuine dispute, in the form of Defendants' representations, that Plaintiff was performing her job at a satisfactory level, (*see* DMF ¶ 19; PMF ¶¶ 3, 19; DMF ¶ 30; PMF ¶¶ 3, 23), and by demonstrating that several parents and students spoke on her behalf to the Board, (DMF ¶ 33; PMF ¶ 3). Plaintiff also met the third prong, as it is undisputed that Plaintiff's contract was not renewed. (*Nini v. Mercer Cty. Cmty. Coll.*, 968 A.2d 739, 745 (N.J. App. Div. 2009), *aff'd*, 995 A.2d 1094 (N.J. 2010) ("[T]here is no difference for purposes of the LAD between plaintiff's nonrenewal and termination."); DMF ¶¶ 54–55; PMF ¶ 3.) Plaintiff, however, has not produced any evidence that either her replacement or her eventual replacement was sufficiently younger to raise an inference of discrimination to satisfy the fourth prong. *Swider*, 134 F. Supp. 2d at 625. The mere fact that her eventual replacement was younger, without evidence as to how much younger, is not enough to satisfy Plaintiff's evidentiary burden. Further, Plaintiff fails to point to any other evidence that could help raise an inference of discrimination. This failure is reflected in Plaintiff's argument, which begins and ends with the assertion that she was a satisfactory teacher. (*See* Pl.'s Opp'n 16–17.)

Even assuming Plaintiff's evidence was sufficient to establish a prima facie case, Defendants have proffered legitimate nondiscriminatory reasons for Plaintiff's nonrenewal— namely, Plaintiff's performance and classroom conduct—and Plaintiff has failed to provide evidence that casts sufficient doubt on those reasons to raise the inference of discrimination. For example, Defendants cite Plaintiff's formal reprimand as evidence of her malperformance.

(Moving Br. 29.) Plaintiff does not dispute she received the letter of reprimand, (PMF ¶ 18), but attempts to attack the basis for the reprimand. Plaintiff argues the letter was the result of an incident with her student J.B., who submitted a certification on Plaintiff's behalf, allegedly debunking the allegations. (*Id.* ¶¶ 17–18.) Yet, J.B.'s certification simply states the administration violated her IEP by failing to inform Plaintiff of her accommodations. (J.B. Certif. ¶ 6.) Further, the letter of reprimand alleges Plaintiff failed to accommodate six students. (Mem. of Reprimand.) Plaintiff's explanation is that some students were abusive to her, or lied about her. (PMF ¶ 15; *see also* J.B. Certif. ¶ 8.) That evidence does not suggest any anti-age bias. In fact, other than a single comment by Principal Kerr, Plaintiff points to no evidence of age-based animus, and even concedes she has no evidence of animus by any of the Board's members. (DMF ¶¶ 54–55; PMF ¶ 3.)

As to Plaintiff's allegedly inappropriate classroom comments, she explains that, "[i]f a student asked me a question about life outside the classroom, I answered the students' questions and if I used examples in my life for them to benefit from the years of experience, then that would make them better students when going out in life." (Second Magnani Certif. in Resp. to Affs. of Metz, Kerr, and Cangelosi ¶ 74.) Plaintiff adds "[t]here is no state rule against answering a student's life questions with examples in my life nor was there any regulation at the school against this nor was I ever reprimanded nor discouraged from doing so . . . ." (*Id.* ¶ 76.) Plaintiff's explanation is not only devoid of any hint of agism by the administration, but it fails to undermine Defendants' proffered legitimate nondiscriminatory reason. Even assuming Plaintiff's explanation was true, or that her students lied about her, the specter of age discrimination is absent. In fact, if Plaintiff's students made up stories about her, causing the administration to act, that in and of itself would constitute a nondiscriminatory reason for Plaintiff's nonrenewal.

In essence, Plaintiff is trying to litigate the merits of her work. But whether Plaintiff was, in fact, a good teacher is not a triable issue. Indeed, it appears many of her students loved and supported her, (*see, e.g.*, The Lezaks' May 8, 2016 Letter, ECF No. 35-24), but that does not demonstrate Defendants' legitimate nondiscriminatory reasons are pretextual. "At this stage, plaintiff may defeat a motion for summary judgment either: (1) by discrediting the proffered reasons for termination, directly or circumstantially; or (2) by adducing evidence the discrimination was more likely than not a motivating or determinative cause of the adverse action." *Lawrence v. Nat'l Westminster Bank N.J.*, 98 F.3d 61, 66 (3d Cir.1996) (discussing the pretext prong of LAD). Plaintiff has failed to either discredit Defendants' reasons for nonrenewal, or advance evidence that would permit an inference of age discrimination. Summary judgment on Count Eight is thus appropriate.

## I.       Count 9: Age Discrimination Prohibited by ADEA

Turning to Plaintiff's ADEA claim, Defendants argue the Court is barred from considering it because she never filed a claim with the Equal Opportunity Employment Commission ("EEOC"). (Moving Br. 33–34 (citing *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 384 (3d Cir. 2007)).) Additionally, Defendants contend Plaintiff's ADEA claim would fail for the same reasons as her LAD claim. (*Id.* at 34.)

In response, Plaintiff essentially restates her LAD arguments. (*See* Pl.'s Opp'n 16–21.) She does not address Defendants' primary argument in the section of her brief on her ADEA claim. (*See id.* at 18–21.) In a separate section, however, Plaintiff makes a general argument that, even though she has not complied with certain time limits under New Jersey law, "the Court can still fashion an equitable remedy for the Plaintiff to compensate her for the unfair treatment she received by her superiors in wrongfully not renewing her contract for the new year." (*Id.* at 23.)

"It is a basic tenet of administrative law that a plaintiff must exhaust all required administrative remedies before bringing a claim for judicial relief." *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997). "Generally, a judicial complaint under the ADEA will be dismissed for failure to exhaust administrative remedies if a supporting EEOC charge was not filed within 180 or 300 days (depending on state law) of notification to the employee of the adverse employment action." *Ruehl*, 500 F.3d at 382.

The Board informed Plaintiff that her contract would not be renewed on April 26, 2016, (DMF ¶ 34; PMF ¶ 3), and she does not argue any equitable doctrine applies to toll the time to file the charge. The Court will not read Plaintiff's general equitable plea as a substitute for an argument that the time to file the EEOC charge has been equitably tolled. Accordingly, the Court finds Plaintiff's ADEA claim statutorily barred. *See Ruehl*, 500 F.3d at 378 (directing summary judgment be entered for failure to timely exhaust administrative remedies). Further, turning to the substance of Plaintiff's ADEA claim, the Court's analysis would be substantively the same as its analysis under LAD. Plaintiff's ADEA claim would thus also fail under the *McDonald Douglass* burden-shifting framework.

## V.   CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted. Summary judgment will be entered in favor of Defendants. An appropriate order follows.

Dated: August 17, 2020

ZAHID N. QURAISHI
UNITED STATES MAGISTRATE JUDGE